IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARISSA MORALES, <br><br> Plaintiff, <br><br> v. <br><br> GOODWIN & ASSOCIATES HOSPITALITY SERVICES, LLC., a New Hampshire Limited Liability Company, <br><br> Defendant. | No. 19-cv-05175 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carissa Morales alleges that her former employer Defendant Goodwin & Associates Hospitality Services, LLC terminated her on account of her pregnancy in violation of Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act ("Title VII"), and the Illinois Human Rights Act. 42 U.S.C. § 2000e(k); 755 ILCS 5/1-102. Defendant now moves for summary judgment. (Dkt. 63.) For the reasons stated below, Defendant's motion is denied.

**I.   BACKGROUND**

Plaintiff Carissa Morales worked for Defendant as an account executive. From the time she was hired around March 2017 until her termination on or about October 31, 2017, Plaintiff served as an at-will employee who sold mystery shopping and hospitality management services to other businesses. (Dkt. 85 ¶ 6.) To evaluate the performance of its account executives, Defendant measured their total sales, number

of sales proposals sent to clients or potential clients, and number of deals closed. (*See id.* ¶¶ 14–18.) Before a restructuring in July 2017, Defendant adjusted performance goals for account executives to measure performance on a quarterly rather than monthly basis. (Dkt. 87 ¶ 12.) In the third quarter of 2017, which ended on September 30, 2017, Plaintiff achieved 94% of her quarterly sales goal of $80,000. (*Id.* ¶ 41.) Three other account executives, Jenny Battershell, Lori Kayajania, and Kim Weaver, achieved 91%, 48.06%, and 76% of their respective sales goals, which were each set at $140,000. (*Id.*)

On July 19, 2017, in connection with Defendant's restructuring, Kurt Eddins assumed the role Senior Vice President of Business Development and became Plaintiff's direct supervisor. (Dkt. 85 ¶ 10.) Plaintiff testified that she informed Eddins on July 19, 2017 that she was pregnant. (*Id.* ¶ 11.) Plaintiff did not discuss with Defendant her taking leave in connection with the pregnancy, however, until September 2017. (Dkt. 87 ¶ 55.) Plaintiff asked Eddins about the leave policy; Eddins referred Plaintiff to Defendant's human resources department. (*Id.*) Eddins then spoke to Tyler Goodwin (Senior Vice President of Operations) and Eric Goodwin (Defendant's owner) to learn about Defendant's leave policy related to pregnancy. (*Id.*) Plaintiff continued to work, but by late October, the first month of the fourth quarter, she had made no sales, closed no deals, and sent only four sales proposals. (Dkt. 85 ¶¶ 22–24.) By the end of October 2017, Jenny Battershell had achieved 24% of her quarterly sales goal and sent out eleven proposals, Lori Kayajania had achieved 35.82% of her sales goal, and Kim Weaver had achieved 24%. (*Id.* ¶ 40; Dkt. 85-3.)

2

On October 31, 20217, Defendant terminated Plaintiff, explaining that she had failed to meet her sales goals. (Dkt. 85 ¶ 31.) Plaintiff then sued Defendant, alleging that Defendant had discriminated against her on account of her pregnancy in violation of Title VII and the Illinois Human Rights Act. (*See* Dkt. 25.) Following a period of discovery, Defendant has now moved for summary judgment on both counts. (Dkt. 63.)

## II. STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most

favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. DISCUSSION

Defendant has moved for summary judgment on Plaintiff's Title VII claim alleging discrimination on the basis of pregnancy as well as Plaintiff's discrimination claim brough under the Illinois Human Rights Act. In addressing discrimination claims under the Illinois Human Rights Act, "Illinois courts apply the federal Title VII framework[.]" *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017). Determining whether summary judgment is appropriate for Plaintiff's claims may therefore proceed under a single analysis as "[b]oth statutes . . . are interpreted in the same manner[.]" *Frey v. Hotel Coleman*, 141 F. Supp. 3d 873, 879 n. 4 (N.D. Ill. 2015).

In an employment discrimination case under Title VII, the single question in evaluating a motion for summary judgment is whether the evidence "would permit a reasonable factfinder to conclude" that some prescribed factor caused the plaintiff's discharge or other adverse employment action. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). In addressing this question, both direct and indirect evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself[.]" *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In concert with the Seventh Circuit's emphasis on the holistic review of evidence, the *McDonnell Douglas* test is a method used to organize evidence in evaluating a motion for summary judgment in a Title VII case. *Johnson*, 892 F.3d at 894. Because a holistic review of the evidence

4

under the *McDonnell Douglas* framework shows that a reasonable jury could find that Plaintiff's pregnancy caused her discharge, Defendant's motion for summary judgment must be denied.

### A. The *McDonnell Douglas* Framework

Under the burden-shifting *McDonnell Douglas* framework, the plaintiff bears the "initial burden" of establishing a prima facie case of discrimination. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a prima facie case is established, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action." *Id.* (quotations omitted). When the employer offers such a reason, the burden "shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id*. Because Plaintiff can establish a prima facie case, Defendant can identify a nondiscriminatory reason for Plaintiff's termination, and there is a factual dispute as to whether Defendant's reason was pretextual, summary judgment should be denied.

#### 1. Plaintiff's Prima Facie Case

To survive summary judgment under the *McDonnell Douglass* framework, plaintiffs must first establish a prima facie case of discrimination by showing they are "(1) members of a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) were subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated

5

employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 894–95. Neither party disputes that Plaintiff is a member of protected class due to her pregnancy and that she suffered an adverse employment action when she was terminated. Factual disputes regarding the two remaining elements, however, enable Plaintiff to establish her prima facie case at the summary judgment phase.

First, there is a factual dispute as to whether Plaintiff performed reasonably on the job in accordance with her employer's legitimate expectations. Defendant does not show beyond a dispute of fact that Defendant expected Plaintiff to make $80,000 in sales, send at least 40 proposals, and close at least ten deals in the fourth quarter of 2017 and that these figures were not aspirational, "lofty goals" as Plaintiff contends. (Dkt. 86 at 12–13; Dkt. 84 at 8–9.) Defendant highlights Tyler Goodwin's testimony, which alludes to the lack of a "set formula" for termination decisions but states that if an employee was failing to meet two of the three quarterly criteria (sales totals, proposals sent, and deals closed), "discussions would have been had." (Dkt. 86 at 14.)

Because "discussions" regarding termination do not necessarily entail a termination decision, however, Defendant's performance expectations for its account executives remain nebulous. Eddins, who was responsible for setting and monitoring Plaintiff's performance goals, also never told Plaintiff that failure to meet these goals could result in termination. (Dkt. 87 ¶¶ 16–17.) Although Defendant's employee handbook notes that failure to meet performance goals could result in termination

6

(Dkt. 85 ¶ 13), several other account executives failed to meet their sales goals and fell short of sending 40 proposals during the third quarter of 2017 without apparent repercussion. (Dkt. 87 ¶ 41.) Moreover, Defendant's insistence that Plaintiff's performance statistics in October 2017 were so low that she could not have possibly caught up by the end of the quarter (Dkt. 86 at 8) suggests a different expectation aligned with consistency of performance rather than the end-of-quarter numbers identified by Defendant. Determining Defendant's legitimate expectations and whether Plaintiff performed reasonably under them thus remains an open question of fact for which a jury is best suited to resolve.

Second, there is a factual dispute as to whether Defendant treated Plaintiff worse than similarly situated employees. "Similarly situated" means "directly comparable in all material respects." *Johnson*, 892 F.3d at 895. Proposed comparators need not be identical in every conceivable way; courts must conduct a "common-sense examination." *Id*. Courts simply must ask whether there are "enough common features between the individuals to allow a meaningful comparison." *Id*. (citing *Coleman*, 667 F.3d at 841). Whether a comparator is similarly situated is "typically a question for the fact finder, unless . . . the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Id*.

Three other employees identified by Plaintiff, Jenny Battershell, Lori Kayajania, and Kim Weaver, had the same job title and responsibilities as Plaintiff and were likewise supervised by Eddins in 2017. (Dkt. 85 ¶ 17; Dkt. 87 ¶ 31.)

7

Although these other account executives also fell short of their quarterly performance goals in the third quarter of 2017, Defendant argues that they still made more sales in October 2017 than Plaintiff, who had made none. (Dkt. 65 at 14.) Plaintiff nevertheless contains that she had "very large deals in the works," which could reasonably have suggested that her quarterly performance was sufficiently comparable to her peers. (Dkt. 85 at 3.) Defendant also highlights that Jenny Battershell had sent out eleven proposals in October 2017 while Plaintiff had sent out four. (*See* Dkt. 85-3; Dkt. 86 at 6.) There is no other evidence on the record, however, as to where these other account executives stood with regards to the numbers of proposals sent and deals closed for the fourth quarter of 2017 at the time of Plaintiff's termination. (*See* Dkt. 86 at 6–7.) Accordingly, there is a triable issue of fact as to whether Plaintiff was similarly situated to Jenny Battershell and the other account executives when she was terminated. Given that there are factual disputes regarding Defendant's legitimate expectations of Plaintiff and the comparability of Plaintiff to her former peers, Plaintiff has established her prima facie case for purposes of summary judgment.

2. *Defendant's Nondiscriminatory Explanation*

Because Plaintiff can establish a prima facie case for purposes of summary judgment, the burden shifts back to Defendant to identify a nondiscriminatory explanation for Plaintiff's termination. *Bagwe v. Sedgwick Claims Mgmt. Services, Inc.*, 811 F.3d 866, 880 (7th Cir. 2016). Defendant asserts that Plaintiff was fired because she had not made any sales, had not closed any deals, and had only sent four

8

proposals during the month of October 2017. (Dkt. 65 at 10–11.) Regardless of whether these metrics constituted Defendant's legitimate expectations of its account executives, Defendant's reason is based on Plaintiff's performance, not on unlawful discrimination. Plaintiff must therefore proffer evidence that Defendant's reason was pretextual to survive summary judgment.

### 3. Pretext

In determining "whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal quotation omitted). When an employer alleges that the plaintiff was not meeting the employer's legitimate expectations, the element of the plaintiff's prima facie case raising that same question "dovetails with the issue of pretext[.]" *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999). As discussed above, there is a factual dispute as to what constituted Defendant's legitimate expectations, and so there is necessarily a factual dispute as to whether Plaintiff was truly fired for failing to meet them.

In addition, Defendant insists that it fired Plaintiff because of her performance in October 2017, but testimony from Tyler Goodwin suggests that Eddins may have raised concerns regarding Plaintiff's performance that led to her termination in "late September, maybe early October[.]" (Dkt. 87 ¶ 47.) Evidence that Eddins voiced concerns regarding Plaintiff's continued employment before October 2017, or even in

9

early October, contradicts Defendant's contention that it fired Plaintiff because of her October performance. In turn, Goodwin's testimony suggests that Defendant did not honestly believe the proffered reason for Plaintiff's termination. When Eddins first raised concerns over Plaintiff's performance, and the extent to which those concerns caused Plaintiff's termination, thus presents another factual dispute relevant to whether Defendant honestly believed its reasoning for firing Plaintiff.

The proximity between Plaintiff's inquiry regarding parental leave and her termination also supports the potential for a reasonable jury to find that Defendant's reason for firing Plaintiff was pretextual.[1] Temporal proximity is rarely sufficient on its own to show that an employee's protected activity caused the employee's discharge, but if there is other evidence supporting the inference, "the timing of the adverse action may be suspicious even if it comes a few weeks or even longer after

---

[1] Although Defendant insists that "the relevant date for analyzing suspicious timing is the date of announcement of the pregnancy" (Dkt. 86 at 3), none of the cases cited by Defendant directly support this contention. In two of the three cases cited by Defendant, the plaintiff did not separately inquire as to the defendant's leave policy after announcing her pregnancy like in the case at hand. *See Karczynski v. Specialty Equipment Mfg., Inc.*, 105 F. Supp. 2d 907, 908–10 (N.D. Ill. 2000); *Rico v. Davis Bancorp, Inc.*, 2009 WL 5064807, at *2 (N.D. Ill. Dec. 16, 2009). Although the court in *Tellez v. Waukegan Illinois Hosp. Co. LLC*, 2008 WL 4900176, at *1 (Nov. 13, 2008) compared the timing of plaintiff's termination to the announcement of her pregnancy rather than her request for maternity leave several weeks later, deciding when the timing of a termination supports an inference of discrimination "cannot be resolved by a legal rule; the answer depends on context." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). Although the plaintiff's supervisor in *Tellez* informed plaintiff upon learning of the pregnancy to fill out paperwork if she wanted to take leave, Eddins was apparently ignorant of Defendant's leave policy until Plaintiff inquired about it in September 2017. (Dkt. 87 ¶ 55.) Unable to answer Plaintiff's question, Eddins asked his own supervisors about the policy "for his own knowledge." (*Id.*) That Eddins raised concerns regarding Plaintiff's performance just weeks after his inquiry into Defendant's maternity leave policy appears relevant to the question of pretext, especially when viewed in combination with other evidence calling the truthfulness of Defendant's reason for firing Plaintiff into question.

the protected activity, depending on context." *Rayford v. La Petite Academy, Inc.*, 2021 WL 2311968, at *5 (N.D. Ill. Jun. 4, 2021). When viewed in combination with other evidence, the lapse of a little over a month between Plaintiff's request for information regarding Defendant's leave policy and her termination reinforces the potential for a reasonable jury to find that Plaintiff's pregnancy caused her termination. *See Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 742 (N.D. Ill. 2013) (lapse of "a little over a month" between the start of poor treatment towards the plaintiff and the plaintiff's termination supported an inference of discrimination). Given that there are disputes of fact over when Defendant began to consider terminating Plaintiff and why it made the ultimate decision to do so, the veracity of Defendant's proffered reasoning for terminating Plaintiff should be made by a jury.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

SO ORDERED in No. 19-cv-05175.

Date: September 30, 2025

JOHN F. KNESS
United States District Judge